Argued and submitted February 11, reversed and remanded August 5, 2009

In the Matter of J. S. B.,
a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF JACKSON COUNTY,
*Respondent,*

*v.*

J. F. B.,
*Appellant.*

Jackson County Circuit Court
030162J;
Petition Number 030162JC;
A139560 (Control), A140167

In the Matter of B. T. B.,
a Minor Child.

STATE ex rel JUVENILE DEPARTMENT
OF JACKSON COUNTY,
*Respondent,*

*v.*

J. F. B.,
*Appellant.*

Jackson County Circuit Court
070387J;
Petition Number 070387JA;
A139561, A140168

214 P3d 827

Margaret McWilliams, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Rolf C. Moan, Acting Solicitor General.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

This is a consolidated appeal by mother from four juvenile court judgments involving two of her children; the first set of judgments arises out of a June 2008 permanency hearing in which the court approved a concurrent plan of adoption over mother's objection, and the second set of judgments arises out of an August 2008 review hearing in which the court changed the permanency plan from adoption to permanent legal guardianship.[1] Mother raises multiple arguments on appeal, one of which is that the judgments arising out of the June permanency hearing are defective on their face under ORS 419B.476. That statute requires a judgment to include certain determinations when it approves a plan of adoption. We reverse and remand.

We take the following facts from the record. Mother has four children, two of whom, J and B, are the subjects of these proceedings. Mother and the children are members of the Yurok Tribe of northern California. J, a daughter born in 2001, was first removed from mother's custody by the Department of Human Services (DHS) in June 2003. In November 2003, after mother completed a drug treatment program, J was returned to her custody. Mother relapsed in May 2004, and J was again removed from her custody. Mother then completed parenting classes, drug and alcohol treatment, a family court program, and mental health counseling. In May 2005, J was returned to mother's custody. Mother's son, B, was born in 2006. In June 2007, mother was arrested for possession of methamphetamine, and DHS took J and B into protective custody, placing them separately in substitute care. They have been under the court's jurisdiction since that time and are in foster care.

In November 2007, mother completed a 90-day inpatient substance abuse treatment program through the Native American Rehabilitation Association. During that program, she completed parenting classes. After attending the Native

---

[1] Separate judgments were entered for each child in each permanency hearing. With the exception of the children's names and case numbers, the July 2008 judgments, which arise from the June 2008 permanency hearing, are identical to each other, and the August 2008 judgments, which arise from the August 2008 review hearing, are also identical to each other.

American Rehabilitation Association program, mother completed an outpatient treatment program with On Track Comprehensive Counseling Services. By the time of the June 2008 permanency review hearing, mother had not used drugs or alcohol for approximately 12 months. During that time, mother regularly attended Narcotics Anonymous meetings and had found a Narcotics Anonymous sponsor.

Additionally, mother completed a mental health evaluation with Dr. Ferrell, who concluded that mother's prognosis for safely parenting J and B was "[g]uarded to poor" and that, "[w]hen her clinical profile is combined with her history of drug use and trauma from her family of origin, her level of risk to her children becomes high." Farrell also opined that mother's ability to maintain sobriety is "poor" due to mother's lack of personal insight. Mother also began mental health counseling sessions with Sheila Lewis at Jackson County Mental Health, who wrote a letter to the court summarizing mother's progress, which states, in part:

> "It is difficult to assess how long this client would benefit being in mental health treatment before her children are returned to her, as therapy is an on-going process that complements client's ability and willingness to internalize what insights she may gain during therapy sessions, and generalize those insights to situations outside of therapy sessions."

At the June 2008 permanency review hearing, mother's attorney argued that, "based on the progress that we've seen in this case, I believe [reunification is] the appropriate way to go." DHS proposed that the children be returned to mother's physical custody or be placed as wards in a permanent guardianship. The juvenile court received written reports from the Court Appointed Special Advocate (CASA)[2]

---

[2] ORS 419A.004(7) defines a " '[c]ourt appointed special advocate' or 'CASA' " as "a person appointed by the court pursuant to a CASA Volunteer Program to act as special advocate pursuant to ORS 419A.170." ORS 419A.170(2) provides that the duties of a CASA are as follows:

"(a) Investigate all relevant information about the case;

"(b) Advocate for the child or ward, ensuring that all relevant facts are brought before the court;

"(c) Facilitate and negotiate to ensure that the court, Department of Human Services, if applicable, and the child or ward's attorney, if any, fulfill their obligations to the child or ward in a timely fashion; and

and DHS. Both the DHS caseworker and the tribal representative supported continuing the primary plan of reunification with mother. In contrast, the children's attorney and the CASA supported adopting the concurrent permanency plan of adoption. In addition, the foster parent for J informed the court that J did not want to return to mother's custody. The court concluded that, although DHS had made active efforts to enable the children to return home, mother had not made sufficient progress to enable the children to return home within a reasonable period of time. Accordingly, at the conclusion of the hearing, the juvenile court ordered that the concurrent plan be changed from guardianship to adoption and ordered the implementation of the concurrent plan of adoption. Those orders were embodied in what are hereafter referred to as the July 2008 judgments.

The second permanency review hearing occurred two months later, in August 2008. At the time of the hearing, mother, according to her attorney, "[did] not support the plan of adoption * * *. She still wants to work towards reunification with her children." The state, however, requested that the court change the permanency plan from adoption to guardianship, a change that the children's attorney supported. The tribe argued that the children should be returned to mother, but supported guardianship as an alternative. B's foster parent argued that adoption was the best option for B, and mother argued that the children should be returned to her custody. At the conclusion of the hearing, the juvenile court ordered the plan for the children to be changed from adoption to guardianship. Those orders were reduced to judgments, which we refer to as the August 2008 judgments. Mother appeals from all of the above-mentioned judgments.

In mother's first assignment of error, which pertains to the July judgments, she asserts that "[t]he juvenile court erred by changing the permanency plan to a plan other than reunification." In support of that assignment, mother makes three arguments.[3] First, mother asserts that the juvenile

"(d) Monitor all court orders to ensure compliance and to bring to the court's attention any change in circumstances that may require a modification of the court's order."

[3] Each of mother's assignments of error assigns error to multiple rulings. ORAP 5.45(2), which provides that "[e]ach assignment of error shall be separately

court erred because it "failed to find by clear and convincing evidence that continued foster care was necessary to avoid a present risk of serious emotional or physical damage to the children if they were returned to [m]other's care" as required by 25 USC section 1912(e). Second, mother argues that she has "made sufficient progress to enable the children to safely return home" under ORS 419B.476(2)(a). Third, mother asserts that the court failed to make the determinations required by ORS 419B.476.

In mother's second assignment of error, which pertains to the August 2008 judgments, mother again asserts that "[t]he juvenile court erred by changing the permanency plan to a plan other than reunification." Mother first argues that "[t]he plain text of 25 USC § 1912(e) indicates that the testimony of a qualified expert witness is a *mandatory* part of the clear and convincing evidence needed to support a foster care placement." (Emphasis in original.) Mother then argues that "[t]he preponderance of the evidence received by the juvenile court at the June 30 and August 20 permanency hearings supports a finding that [she] is a minimally adequate parent capable of providing appropriate care for her children."

■       We first turn to mother's third argument under her first assignment of errorthat the juvenile court failed to make determinations required by ORS 419B.476(5)—because it is dispositive. Insofar as we can discern, mother did not make an express request for determinations under the statute at the time of the hearing. But no request for determinations was necessary where ORS 419B.476(5) "dictates that the required finding be made—not at the time of hearing—but in an order issued within 20 days after the hearing." *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 181-82, 205 P3d 36 (2009).

ORS 419B.476(5) provides as follows:

"The court shall enter an order within 20 days after the permanency hearing. In addition to any determinations or

stated," contemplates that separate rulings should be challenged by discrete assignments of error.

orders the court may make under subsection (4) of this section, *the order shall include*:

"(a)   The court's determination required under subsections (2) and (3) of this section, including a brief description of the efforts the department has made with regard to the case plan in effect at the time of the permanency hearing;

"* * * * *

"(d)   If the court determines that the permanency plan for the ward should be adoption, the court's determination of whether one of the circumstances in ORS 419B.498(2) is applicable;

"(e)   If the court determines that the permanency plan for the ward should be establishment of a legal guardianship or placement with a fit and willing relative, the court's determination of why neither placement with parents nor adoption is appropriate[.]"

(Emphasis added.) ORS 419B.498(2) provides, in turn, as follows:

"The department shall file a petition to terminate the parental rights of a parent in the circumstances described in subsection (1) of this section unless:

"(a)   The child or ward is being cared for by a relative and that placement is intended to be permanent;

"(b)   There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"(A)   The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476(5)(c);

"(B)   Another permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships; or

"(C)   The court or local citizen review board in a prior hearing or review determined that while the case plan was

to reunify the family the department did not make reasonable efforts or, if the Indian Child Welfare Act applies, active efforts to make it possible for the child or ward to safely return home; or

"(c) The department has not provided to the family of the child or ward, consistent with the time period in the case plan, such services as the department deems necessary for the child or ward to safely return home, if reasonable efforts to make it possible for the child or ward to safely return home are required to be made with respect to the child or ward."

Thus, under ORS 419B.476(5)(d), if the juvenile court changes a permanency plan from reunification to adoption, the judgment shall include a determination "whether one of the circumstances in ORS 419B.498(2) is applicable."

The juvenile court's July 2008 judgments provide as follows:

"The above named child having been regularly brought before the entitled Court on a petition filed as provided by law, and testimony having been taken in said matter and good cause appearing therefore; and the court makes the following finding:

"It is in the best interests and welfare of the child to continue in protective custody for care placement and supervision.

"Department of Human Services - Child Welfare Division has made active efforts to prevent or eliminate the need for removal of the child and to make it possible for the child to return to or remain safely in the family home:

"NOW THEREFORE, IT IS THE JUDGMENT OF THE COURT THAT:

"It is in the best interest and welfare of said child to remain a ward of the Court, in the legal care and custody of the Department of Human Services - Child Welfare Division, for continued placement in foster care. The Court approves the implementation of the concurrent plan of adoption."

As mother points out on appeal, the juvenile court failed to include a determination in the judgments regarding whether any of the circumstances in ORS 419B.498(2) are

applicable, as required by ORS 419B.476(5)(d). The judgments' failure to find that none of the circumstances enumerated in ORS 419B.498(2) is applicable is fatal. Because those judgments do not comply with the above statutes, they must be reversed and remanded. *M. A.*, 227 Or App at 183-84.

Having concluded that the July 2008 judgments are defective on their face, we next consider the validity of the August 2008 judgments and whether they can exist independently of the July 2008 judgments. To answer that question, we turn to ORS 419B.476(2), which provides as follows:

"At a permanency hearing the court shall:

"(a) If the case plan at the time of the hearing is to reunify the family, determine whether the Department of Human Services has made reasonable efforts or, if the Indian Child Welfare Act applies, active efforts to make it possible for the ward to safely return home and whether the parent has made sufficient progress to make it possible for the ward to safely return home. In making its determination, the court shall consider the ward's health and safety the paramount concerns.

"(b) If the case plan at the time of the hearing is something other than to reunify the family, determine whether the department has made reasonable efforts to place the ward in a timely manner in accordance with the plan, including, if appropriate, reasonable efforts to place the ward through an interstate placement, and to complete the steps necessary to finalize the permanent placement.

"(c) If the case plan at the time of the hearing is something other than to reunify the family, determine whether the department has considered permanent placement options for the ward, including, if appropriate, whether the department has considered both permanent in-state placement options and permanent interstate placement options for the ward.

"(d) Make the findings of fact under ORS 419B.449(2)."

The language of ORS 419B.476(2) reflects the intention of the Oregon legislature to incorporate the policies expressed by Congress in the Indian Child Welfare Act

(ICWA) as codified in 25 USC sections 1901 to 1963. 25 USC section 1901 provides:

"Recognizing the special relationship between the United States and the Indian tribes and their members and the Federal responsibility to Indian people, the Congress finds—

"(1)  that clause 3, section 8, article I of the United States Constitution provides that 'The Congress shall have Power * * * To regulate Commerce * * * with Indian [T]ribes' and, through this and other constitutional authority, Congress has plenary power over Indian affairs;

"(2)  that Congress, through statutes, treaties, and the general course of dealing with Indian tribes, has assumed the responsibility for the protection and preservation of Indian tribes and their resources;

"(3)  that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe;

"(4)  that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and

"(5)  that the States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."

25 USC section 1902 provides:

"The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian

tribes in the operation of child and family service programs."

Because the proposed case plan at the time of the June 2008 hearing was reunification, the juvenile court was required to apply the standards set out in ORS 419B.476(2)(a) in accordance with the policy expressed in 25 USC sections 1901 and 1902 and to determine whether active efforts by DHS had been made to return the children to mother and whether she had made sufficient progress for their safe return. Although the July 2008 judgments arising out of the June 2008 hearing did not address on their face whether mother had made sufficient progress to make it possible for the children to return home safely, they did find that "Child Welfare Division has made active efforts to prevent or eliminate the need for removal of the child and to make it possible for the child to return to or return safely in the family home." The August 2008 judgments also found that "[a]ll reasonable efforts have been made to prevent or eliminate the need for removal of the child and to make it possible for the child to return to or remain safely in the family home[.]" The August 2008 judgments, however, did not address the issues of mother's progress and whether DHS made "active efforts" to return the children to mother as required by ORS 419B.476(2)(a).

The issue then is whether, under the circumstances of this case, the juvenile court was required at the August hearing to make the assessments required by ORS 419B.476(2)(a). Mother, for her part, sought reunification at both the June and August hearings. The juvenile court, apparently relying on its earlier findings in the June hearing, did not undertake to reconsider mother's circumstances for purposes of reunification at the time of the August hearing, even though that opportunity through mother's advocacy presented itself. We conclude, in light of the policies of the ICWA to afford an opportunity for reunification at every dispositional step that could result in contributing to the permanent removal of children subject to its protections, that it was incumbent on the juvenile court at the August hearing to either make new findings under ORS 419B.476(2)(a) or to find that the circumstances regarding reunification had not changed since the last hearing held under ORS

419B.476(2)(a). Otherwise, the policies articulated in 25 USC sections 1901 and 1902 could be frustrated in a hearing held pursuant to ORS 419B.476(2)(b) and (c) by a court's reliance to deny reunification on circumstances that no longer exist at the time of the instant hearing.[4] For that reason, we conclude that the August 2008 judgments are also defective and must also be reversed so that the juvenile court can make the determinations that ICWA contempates.[5]

The other issues raised by mother on appeal are premature at this time. *M. A.*, 227 Or App at 184. On remand, the juvenile court should make determinations and enter judgments that comply with ORS 419B.476(5)(d), ORS 419B.498(2), and ORS 419B.476(2).

Reversed and remanded.

---

[4] It is the legal effect of a juvenile hearing involving an Indian child that determines whether the requirements of ICWA should be imposed and not the physical placement of the child. *See State ex rel Juv. Dept. v. Cooke*, 88 Or App 176, 744 P2d 596 (1987) (holding that ICWA governs a dependency hearing in which the court finds the children within its jurisdiction but does not remove the children's physical custody from the mother).

[5] On remand, the court, consistent with the policies of ICWA, should consider evidence of any changes in the parties' circumstances since the most recent hearing.