Argued and submitted March 28, affirmed in part, reversed in part, and remanded for further proceedings June 27, 2012

In the Matter of C. A. F.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

S. A.,
*Appellant.*

Marion County Circuit Court
J090436;
Petition Number 042110FLA1;
A149996

281 P3d 655

Sarah Peterson argued the cause for appellant. With her on the brief was Metcalfe & Peterson LLC.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

SERCOMBE, J.

## SERCOMBE, J.

In this dependency case, the juvenile court adopted a permanency plan for father's child, C, that referred C for guardianship under ORS 419B.476.[1] Sometime later, father sought to change the permanency plan to provide for the return of C to him. At the same time, the Department of Human Services (DHS) moved to establish a particular guardian for C under ORS 419B.366. After a hearing, the juvenile court entered an order establishing the guardianship. Father appeals from that order and raises eight assignments of error. We write to address his first and fourth assignments of error and reject his remaining assignments of error without further discussion.

In his first assignment of error, father contends that the juvenile court entered the order after a combined permanency and guardianship hearing and that the court erred in failing to include in the order the permanency determinations required by ORS 419B.476(5). In his fourth assignment of error, father asserts that there is no evidence to support the court's determination under ORS 419B.366(5)(c) that the "proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a

---

[1] ORS 419B.476 sets out the required determinations to be made during and following a permanency hearing. In particular, ORS 419B.476(5) provides, in part:

"The court shall enter an order within 20 days after the permanency hearing. In addition to any determinations or orders the court may make under subsection (4) of this section, the order shall include:

"(a) The court's determination required under subsections (2) and (3) of this section, including a brief description of the efforts the department has made with regard to the case plan in effect at the time of the permanency hearing;

"(b) The court's determination of the permanency plan for the ward that includes whether and, if applicable, when:

"(A) The ward will be returned to the parent;

"(B) The ward will be placed for adoption, and a petition for termination of parental rights will be filed;

"(C) The ward will be referred for establishment of legal guardianship; or

"(D) The ward will be placed in another planned permanent living arrangement[.]"

guardian."[2] We conclude that the court erred in failing to include in the order the required permanency plan determination and that there was sufficient evidence to support the court's determination that the guardian was suitable and willing. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

Father does not request that we exercise our discretion to conduct *de novo* review in this case, and we perceive no reason to do so. *See* ORAP 5.40(8)(c) (the court will exercise discretion to try the cause anew on the record only in exceptional cases). Accordingly, we "review the juvenile court's legal conclusions for errors of law but are bound by its findings of historical fact if there is any evidence in the record to support them." *Dept. of Human Services v. N. S.*, 246 Or App 341, 344, 265 P3d 792 (2011), *rev den*, 351 Or 586 (2012). In light of that standard, we state the facts consistently with the trial court's express and implied findings, as supplemented with uncontroverted facts from the record. *See State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010).

C was found to be within the juvenile court's jurisdiction in August 2009. In August 2010, the juvenile court approved a change in the permanency plan for C from reunification to guardianship pursuant to ORS 419B.476. Sometime later, father, who lived in Missouri, requested that the permanency plan be changed back to reunification.[3] In June 2011, DHS moved to establish guardianship and proposed C's step-grandmother as guardian.

---

[2] ORS 419B.366(5) provides:

"If the court has approved a plan of guardianship under ORS 419B.476, the court may grant the motion for guardianship if the court determines, after a hearing, that:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d) Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interests, the court shall consider the ward's wishes."

[3] It is unclear from the record when father made that request.

Both issues came before the court at a hearing held on July 22, 2011. At that hearing, father indicated that he was still seeking to change the permanency plan for C to reunification and that he was contesting DHS's motion to establish guardianship. Father noted that his home state, Missouri, was willing to initiate a home study of father through the Interstate Compact on the Placement of Children (ICPC), ORS 417.200 to 417.260. He requested that the hearing be continued pending the results of that study.

C's attorney opposed that request and asked the court to "proceed with the permanency hearing * * * and then effectuate the guardianship." The court acknowledged that the hearing was, in part, a permanency hearing for C, and it agreed to continue the hearing, noting that "it's important that we get the information from the ICPC." The court then instructed the parties to set a date for the continued hearing "about 60 days out" and noted that the continued hearing would serve as the yearly permanency hearing for C required by ORS 419B.470(6).

The continued hearing was held before a different judge on September 30, 2011. Before that hearing, on September 21, 2011, DHS submitted a document—which was later received by the court as an exhibit—that identified the purpose of the September 30 hearing as a "Contested Guardianship/Permanency Hearing." However, at the hearing, counsel for DHS stated only that the parties were there for a "continuation of the guardianship [hearing]" regarding C. Counsel for DHS also suggested that the hearing had been set for a permanency hearing for father's other child, T, but that, because T's plan had already been changed and T was not yet due for a yearly permanency hearing, "I don't believe we'll need another permanency hearing judgment out of today's hearing." Additionally, counsel for DHS noted that "[t]he proposed guardian * * * is here today. She's already been previously questioned by Judge Prall in this case and been found to be a fit and willing proposed guardian."

In response, father's counsel explained:

"Your [H]onor, first of all, if I might address the issue of [T]. This matter was continued as a permanency hearing as

to [T] as well as [C]. And it was also set regarding the guardianship finalization for [C].

"The reason that I had asked that it be set that way was that, just prior to the last court hearing, we found out that Missouri was willing to do a new ICPC as to [father]. So we wanted to leave open the opportunity today to ask that the plan on both girls be changed to return to parent, namely [father] in Missouri.

"Earlier this week, my staff spoke with the actual worker in Missouri who did the home study, and she reported that they were denying placement. I had a chance to share that with [father] earlier in the week, and he indicates that he's going to be challenging that through the state of Missouri.

"In any case, I would withdraw the request that today be a permanency hearing as to [T]."

The court responded, "The prior order as to [T] will stand and we won't need to set a new permanency judgment."

Then, after a brief introduction by counsel, father and the court engaged in the following colloquy:

"THE COURT: Thank you, [father]. This is an opportunity for you to let the court know why you have a continuing objection to this guardianship for [C]. So your lawyer may have some specific questions for you, but I just want to give you an opportunity to just tell me in your own words what your complaints are about, sir.

"* * * * *

"[FATHER]: First off, my first home study was failed because of my alcohol use. What is upsetting me now is the home study was denied again because my sister accidentally cleaned her car out, put beer bottles in my trash can, and I got denied. I don't think I'm fairly being judged here.

"THE COURT: Well, you understand, sir, that this court doesn't have any power to change the outcome of your home study, and it does make it impossible for this court to grant your request to have [C] live with you. And I understand you're going to go ahead and appeal that. And if something new happens, then we may be in a different posture. But it would appear to me, sir, because of the denial of

that home study that you are, at least for purposes of this hearing, kind of at a dead end.

"[FATHER]:    At a dead end.

"THE COURT:    If there's other information I need to hear about, tell me.

"[FATHER]:    Well, today you guys want me to turn around and give guardianship from my daughter, which I do not and I will never agree with that, because I'm the one that made that girl. I am the one that's supposed to be talking to her on the phone, which the court denied me of that. And I—I don't even get letters from her very seldom, and I don't appreciate that either.

"And yes, I do not agree with this guardianship today, no matter what goes on.

"THE COURT:    All right. I think you've made your position quite clear."

Following additional questioning by father's counsel and counsel for DHS, and questioning by the court regarding the issue of father's contact with C, the court concluded:

"Okay. Appointments are terminated today. And with respect to the findings, it seems to me that those findings with respect to the mandatory statutory findings were already made by Judge Prall. Nothing has happened in this hearing which would cause this court to deter from the previous findings made by Judge Prall that the guardianship is in the ward's best interests.

"I think, counselor, in essence, stipulating that adoption is not an appropriate plan and that those efforts have been exhausted, and that happened in prior hearings that I was not a party to. And this was simply a question of whether we could have a return to father plan for [C] or not. And since he's failed his home study again, that door would appear to be closed unless he's successful in an appeal, in which case I'm sure he will be letting you know.

"Is there anything else we need to do for the record today?"

Father's counsel did not respond to the court's inquiry. The court ultimately entered the order establishing a guardianship under ORS 419B.366. That order did not include

any of the permanency determinations required by ORS 419B.476(5), including a determination of the permanency plan under ORS 419B.476(5)(b).

In father's first assignment of error, he contends that the juvenile court erred in entering an order after the September 30 hearing that did not comply with the requirements of ORS 419B.476(5). As noted, that statute requires a court to enter a written order within 20 days after a permanency hearing that includes a determination regarding the permanency plan for the ward and predicate findings supporting that determination.

Father acknowledges that he did not raise that issue below. However, he asserts that, under the principles established in *State ex rel DHS v. M. A. (A139693)*, 227 Or App 172, 205 P3d 36 (2009), he was not required to do so. In that case, we held that preservation principles are inapplicable to claims that the court erred in failing to make the required findings under ORS 419B.476(5). *M. A.*, 227 Or App at 182 ("Here, the statute dictates that the required findings be made—not at the time of hearing—but in an order issued within 20 days after the hearing. Until that order issued, mother had no way of knowing that the court would enter a judgment that did not comply with the statute." (Citation omitted.)); *see also Dept. of Human Services v. W. F.*, 240 Or App 443, 247 P3d 329 (2011) (reversing and remanding judgment that did not comply with ORS 419B.476(5), despite lack of objection below); *Dept. of Human Services v. J. W.*, 239 Or App 596, 244 P3d 922 (2010) (same). Alternatively, father argues that the error is apparent on the record, ORAP 5.45(1), and that we should exercise our discretion to correct it. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991).

DHS concedes that the order entered in this case does not contain any of the permanency findings required by ORS 419B.476(5) and that, "in a number of other cases, this court has concluded that preservation is not required with respect to claims of error relating to deficient permanency judgments." However, DHS contends that this case is distinguishable from *M. A.* and its progeny because it is not clear

whether the September 30 hearing was, in fact, a permanency hearing. Although DHS acknowledges that the July 22 hearing was a permanency hearing, it suggests that it is at least plausible that father abandoned his request for a permanency determination regarding C at the September 30 hearing. In DHS's view, because it is unclear whether father abandoned his request for a permanency determination regarding C, father was required to preserve his claim that the court erred in failing to make the required permanency plan determinations in its subsequent order. For the same reason, DHS asserts that any error by the court was not plain and that, in any event, we should not exercise our discretion to correct it.

As an initial matter, we conclude that the September 30 hearing was a permanency hearing and that father did not abandon his request for a permanency plan determination regarding C. Father's counsel explained to the court that the "matter was continued as a permanency hearing as to [T] as well as [C]." Then, father's counsel explicitly withdrew "the request that today be a permanency hearing as to [T]." That withdrawal as to T cannot be understood as a simultaneous withdrawal of father's request for a permanency hearing as to C. In fact, read together, father's counsel's statements to the court are an explicit indication of father's continued desire for a permanency plan determination regarding C. Moreover, the court's own statement at the conclusion of the hearing that "this was simply a question of whether we could have a return to father plan for C" illustrates that the court understood that father was still seeking a permanency plan determination. Finally, the hearing was scheduled as the yearly permanency hearing for C required by ORS 419B.470(6); accordingly, even if father had explicitly withdrawn his request for a permanency hearing, the court was obligated by statute to conduct a permanency hearing and make a permanency plan determination regarding C.

Given all of that, we conclude that the court erred in failing to decide the issue before it—whether the permanency plan for C should remain guardianship or be changed to reunification—as required by ORS 419B.476(5)(b). Again, that statute requires the court to enter a written order within 20 days after a permanency hearing that includes, among

other things, the "court's determination of the permanency plan for the ward." Here, the court entered an order within 20 days of the September 30 permanency hearing that did not contain an express determination of the permanency plan for C. Accordingly, the court erred under *M. A.*

DHS contends that any error relating to a deficiency in the court's order is unpreserved because father failed to respond to the court's inquiry of whether "there is anything else we need to do for the record today." We disagree. ORS 419B.476(5) requires the court to "enter an order * * * after the permanency hearing" on the "court's determination of the permanency plan." The court's post-hearing obligation to determine the permanency issue with a written order was not "anything else [it] need[ed] to do for the record today," *i.e.*, something that the court needed to do at the time of the hearing and for purposes of completing the hearing record. Defendant was not invited to remind the court of that different obligation. His failure to do so did not mislead the court or DHS. *See Dept. of Human Services v. D. D.*, 238 Or App 134, 241 P3d 1177 (2010), *rev den*, 349 Or 602 (2011) (declining plain error review of failure to make findings at a dependency hearing and distinguishing review of post-hearing obligations to make findings).

In father's fourth assignment of error, he contends that there was no evidence to support the court's determination that the "proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian."[4] We review the juvenile court's factual findings to determine if there is any evidence in the record to support them. *N. S.*, 246 Or App at 344.

---

[4] We have repeatedly held that, where a remand is necessary because a permanency judgment lacks the determinations required by ORS 419B.476(5), our review of the merits of the *permanency plan determination* is premature. *See, e.g., State ex rel Juv. Dept. v. J. F. B.*, 230 Or App 106, 214 P3d 827 (2009) (stating that principle); *Dept. of Human Services v. C. L.*, 247 Or App 351, 268 P3d 801 (2011) (same); *Dept. of Human Services v. G. E.*, 233 Or App 618, 227 P3d 1180 (2010) (same). This case is distinguishable from that line of cases. Here, father appeals from a single order that followed a hearing concerning two separate issues: (1) whether the court should grant father's motion to change C's permanency plan to reunification under ORS 419B.476 and (2) whether the court should allow DHS's motion to establish a guardianship under ORS 419B.366. ORS 419B.366(5) allows the juvenile court to grant a motion for guardianship whenever "the court has approved a plan of guardianship under ORS 419B.476." As we have noted, at the time of that hearing, the permanency plan for C was guardianship.

We conclude that there was evidence to support the court's factual determination that the proposed guardian was suitable and willing. Preliminarily, we note that father's expressed opposition to the appointment of the guardian was solely because "I'm the one that made that girl." Father never raised an issue of the guardian's fitness, not even when the court suggested that father might have problems with the guardian.[5]

In any event, the record supports the court's suitability determination. DHS's motion to establish guardianship contained an attached affidavit of counsel in support of that motion. Because the affidavit was before the court and no objections appear in the record and no party argues otherwise on appeal, we assume that the court considered the contents of the affidavit and that it implicitly received it into evidence.[6] The affidavit included a statement that "the

---

Notwithstanding the efficiencies of deciding both requests together, the court's establishment of a guardianship under ORS 419B.366 was independent of its obligation to decide father's request for a permanency plan change. Accordingly, our review of the merits of the order establishing a guardianship is not premature.

[5] Father was angry and confrontational in some of his written and oral communications to T and C, in the words of the court, as a "platform for your grievances." The court urged father to moderate his letters to more loving thoughts and indicated that "it's important for you to recognize that not all of this is something that is done to you by either the State of Oregon or the guardians in this case, but has to do with the underlying relationship that you have, or in your case don't really have, with your daughters." The court continued:

"THE COURT: If you want to be pissed off at the guardians, you can write a separate letter to them, but leave the kids out of it because—

"[FATHER]: Excuse me?

"THE COURT: —they don't care. Yeah, I'm done.

"[FATHER]: Excuse me?

"THE COURT: Yes, sir.

"[FATHER]: Excuse me?

"THE COURT: I'm listening.

"[FATHER]: I don't know where you think I'm pissed off at the guardian, as you put it.

"THE COURT: Well, good. If you're not, that's all so much the better."

[6] Neither party contends on appeal that ORS 419A.253—which requires the court either to take judicial notice of certain reports and materials on a ward's "history and prognosis" or to formally receive them into evidence—applies in this case. The contents of the affidavit related to the prospective status and best interests of C and the suitability and willingness of the prospective guardian, and not the ward's past history or current prognosis.

Department of Human Services has determined that [the proposed guardian] is able and willing to assume the role of guardian and is the most appropriate placement for the child. The child has an excellent relationship with this placement." The affidavit testimony is sufficient support—at least without any evidence or objection to the contrary—for the court's determination that the guardian was suitable and willing. It meets our "any evidence" standard of review. The court did not err in adopting the suitability and willingness finding.[7]

Affirmed in part, reversed in part, and remanded for further proceedings.

---

[7] Father also asserts, in part, that the court erred in relying on "the mandatory statutory findings [that] were already made by Judge Prall." However, there is nothing in the record to confirm that Judge Prall had previously made findings on whether the proposed guardian in this case was suitable and willing or to suggest that the court relied on evidence presented by DHS at previous hearings. Read in context, the court's statement that "nothing has happened in this hearing which would cause this court to deter from the previous findings made by Judge Prall that the guardianship is in the ward's best interests" appears to be a statement regarding the court's decision not to change the permanency plan for C. Accordingly, we reject that argument without further discussion.