Submitted September 12, affirmed November 6, 2019

In the Matter of L. D. G.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*v.*
A. D. J.,
*Appellant.*

Marion County Circuit Court
17JU03960; A170526 (Control)

In the Matter of E. L. G.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*v.*
A. D. J.,
*Appellant.*

Marion County Circuit Court
17JU03961; A170528

In the Matter of L. D. G.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*v.*
A. D. J.,
*Appellant.*

Marion County Circuit Court
18JU02756; A170531

In the Matter of E. L. G.,
a Child.
DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*v.*

# A. D. J.,
### *Appellant.*

## Marion County Circuit Court
## 18JU027; A170532

453 P3d 619

In this juvenile dependency case, mother appeals from judgments of the juvenile court changing the permanency plans for her children from reunification to adoption. Mother argues on appeal that there were two compelling reasons to forgo changing the permanency plans from reunification to adoption—first, that she was successfully participating in services, and, second, that a plan of "durable" or general guardianship was better suited to meet the children's needs. The Department of Human Services contends that the record supports the finding of the juvenile court that mother had not made adequate progress and was not successfully completing services in a way that would allow the children to be returned to her within a reasonable time and that, in light of their special needs, the children needed permanency that the foster family was able to provide through adoption. *Held*: The trial court's determination that the general guardianship—as distinct from a permanent guardianship—proposed by mother did not best serve the interest of both children is permissible given the evidence in the record.

Affirmed.


Cheryl A. Pellegrini, Judge.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Shannon Flowers, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Carson L. White, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

In this juvenile dependency case, mother appeals from judgments of the juvenile court changing the permanency plans for her children from reunification to adoption. Mother argues on appeal that there were two compelling reasons to forgo changing the permanency plans from reunification to adoption—first, that she was successfully participating in services, and, second, that a plan of "durable" or general guardianship was better suited to meet the children's needs. The Department of Human Services (DHS) contends that the record supports the findings of the juvenile court that mother had not made adequate progress and was not successfully completing services in a way that would allow the children to be returned to her within a reasonable time and that the children needed permanency that the foster family was able to provide through adoption. For the following reasons, we affirm.

Mother does not request that we exercise *de novo* review of the record *in toto*, wherein we would "try the cause anew upon the record," nor does mother request that we exercise line item *de novo* review wherein we "make one or more factual findings anew upon the record," ORS 19.415 (3)(b), and we perceive no reason to do so. ORAP 5.40(8)(c) ("The Court of Appeals will exercise discretion to try the cause anew on the record *** only in exceptional cases."). As such, "we review the juvenile court's legal conclusions for errors of law but are bound by its findings of historical fact if there is any evidence in the record to support them." *Dept. of Human Services v. S. A.*, 250 Or App 720, 723, 281 P3d 655 (2012) (internal citations omitted). In light of that standard, we state the following facts consistently with the juvenile court's express and implied findings, as supplemented with uncontroverted facts from the record. *Id.*

In February 2017, DHS followed up on reports from the children's school that mother's two children were often left home alone, that they were dirty and smelled of cigarette smoke, that the older child took care of the younger child, that the older child had behavioral issues, that the younger child had autism and needed special parenting support, that both children had serious dental issues that

went untreated, and that the school was unable to reach the parents. Ultimately, both mother and father[1] acknowledged that they were using methamphetamine.

A few months later, DHS removed the children, filed dependency jurisdiction petitions, and placed the children in foster care. The juvenile court found the children within its jurisdiction and made the children wards of the court on the findings that mother's substance abuse and mental health issues impaired her ability to safely parent and that mother required necessary parent training and information in order to provide for her children's basic and special needs. In July 2018, a year later, the juvenile court made the additional finding that mother was a victim of domestic violence and that she needed help to protect the children from that violence.

In September 2018, DHS sought to change the permanency plan for the children from reunification to adoption. At that permanency hearing, the juvenile court heard testimony from mother's mental health and substance abuse therapist and determined that mother was successfully participating in services at that time. Accordingly, the parties agreed to a continuance, and the juvenile court continued the permanency hearing to a later date.

In December 2018, mother argued that "she'd like to have the children returned to her care, but if not, then she'd like it to be a durable guardianship and [mother and her attorney] talked about that a little bit, but the State is asking for the concurrent plan to be adoption." Ultimately, the juvenile court granted mother a continuance to adequately prepare her general guardianship plan, explaining that

> "where the Court's going is that, concurring with the children's attorney and the need for permanency, my concern is that were we to go forward today without giving the lawyer for mother at least time to think about and perhaps, well, just retool her presentation, if not acquire or obtain additional witnesses, I'm concerned that, were we to go forward today and apply this decision and place the burden on Mother, that any result and ruling of the Court would be vulnerable to challenge [and may] * * * create a huge delay."

---

[1] Father is not a party on appeal.

In February 2019, the juvenile court resumed the permanency hearing and determined that the children's permanency plan should be changed from reunification to adoption. The juvenile court made detailed findings, including that "DHS has made reasonable efforts" to remediate the jurisdictional bases of the children's wardship. In regard to mother's progress, the juvenile court found that "there is not enough information in the record to determine if she is maintaining sobriety, that being due to the fact that there was testimony that she had missed a number of urinalyses (UAs), and further that she has missed three of eight individual sessions and six group sessions between November and January." The juvenile court continued:

> "[T]here's no evidence that she ever engaged with a mentor and, as to parents coaching, observed visits revealed that [mother] was not actively parenting, meaning that she was unable to maintain the calm and provide guidance and redirection, instead allowing the children to become physical with her. She was invited but did not attend to any meetings at the school for, I know it was [younger child's] and I'm not sure if it was [older child's] school plans, so that, too, would have been part of the coaching process.

> "*****

> "[Mother] also would need to present as having a stable housing living situation and a support system to assist her and the children were they to be returned to her care. It's unclear what [mother's] living situation is.

> "[T]estimony was contradicted by other credible evidence suggesting that mother has a boyfriend with whom she either stays or lives. [Mother] has not been forthcoming with DHS about this and, as a result, DHS has been unable to do an assessment about the adequacy of her home situation."

The juvenile court concluded that, "despite those reasonable efforts" made by DHS, "neither parent has made sufficient progress to make it possible for the children to safely return home. Expert testimony indicates that neither parent will have met those conditions within the next four to six months," and the children had already been under the court's jurisdiction for 22 months.

The juvenile court then made findings as to whether another plan, other than reunification or adoption, would better suit the health and safety needs of the children. The juvenile court found, as specific to mother's older child:

"[Mother] argues that a durable guardianship is in the best interests of the children, as evidenced by both their emotional bond to her and the fact that [older child] testified that she loves her mother and wishes to continue to have a relationship with her and, as such, does not want to be adopted, but wants a guardianship. [Older child] herself testified that she wanted a guardianship and the Court will also note that she expressed some concern at the same time in the context of the same period of her testimony and some anxiety about her future and recognized that a guardianship was not permanent.

"* * * * *

"Long-term, [older child] wants contact with her parents, she does love her mother very much and is bonded to her and she also wants to be adopted. That was clear.

"She described her perfect world where she and her brother would live with her mom, but not at grandpa's house because that's where bad things happen. And she also acknowledged that she wasn't sure exactly where Mom was living at this point. She testified that she loves her mother very much, but she's not sure that she can or would protect us from further domestic violence and that she still experiences trauma from the domestic violence she witnessed by her father against her mother, she described it as still hurting inside."

The juvenile court also made findings specific to mother's younger child who is autistic and requires special parenting support. The juvenile court found that

"[younger child] requires what the evaluators described as special care. When he came into care, he could not attend to his daily needs, meaning take a bath, brush his teeth, or do other things that one would expect * * *. His vocabulary was limited to 30 to 40 words, he had significant dental needs, he's also diagnosed with autism.

"Dr. Eagle * * * concluded that [younger child] has higher-than-average parenting needs. * * * He also needs to have certainty about his place and who will care for

him. The possibility of a move in six to nine months would be extremely disruptive, given his diagnosis of autism. Dr. Eagle concluded that [younger child] needs the highest level of permanency available to him, he needs routine, consistency, stability, and structure. That is adoption.

"The current foster parents are equipped and able to meet the needs of each child. *** The foster mother has ten years experience working with special-needs children in the school setting. The children have made significant developmental and emotional progress while in their care, *** [b]oth children need the greatest level of permanency."

Ruling directly on whether a "durable" or general guardianship, ORS 419B.366, as proposed by mother, would meet the requirements of the children, the juvenile court found that a general guardianship "does not offer the requisite level of permanency and is not consistent with the children's needs." This is because a general guardianship is "subject to review, either parent may move to vacate it, in fact it is precisely for this reason that [mother] proposes it." As the juvenile court found, "There is no evidence that delaying permanency at this point would be in the best interests of the children. In fact there is evidence that it would not be in the best interests to delay permanency any longer." The juvenile court concluded that mother's children "have particular needs, as well-documented" and that foster mom has "the skills necessary to meet the particular needs of the children, and in that way [the foster family is] minimally adequate." Moreover, "[t]he record does not contain evidence to convince the Court that either [father] or [mother] at this point are able to provide that level of care, which would be for these children minimally adequate, for their children." Having made the above findings, the juvenile court changed the children's permanency plan from reunification to adoption. Mother now appeals from the juvenile court's decision.

"While a child is a ward of the court, the court oversees the development and implementation of a permanency plan for the child." *Dept. of Human Services v. J. C.*, 365 Or 223, 226, 444 P3d 1098 (2019) (citing ORS 419B.476). A child becomes a ward of the court when the court must assert jurisdiction over the child "to protect the child's safety and to work with the child's family to correct the problems that

gave rise to the court's exercise of jurisdiction." *Dept. of Human Services v. S. M.*, 355 Or 241, 245-46, 323 P3d 947 (2014) (citing ORS 419B.090(2)); ORS 419B.328(1).

"ORS chapter 419B provides that, if a ward has not been reunited with his or her family within 12 months after the ward came into the juvenile court's jurisdiction, the juvenile court will hold a 'permanency hearing' to determine an appropriate long-term path for the ward. ORS 419B.476." *S. M.*, 355 Or at 247.

> "At the permanency hearing, the juvenile court will determine whether it is appropriate for DHS to: (1) continue working towards reunification with the family; (2) place the child for adoption and petition for termination of parental rights; (3) refer the ward 'for establishment of legal guardianship'; or (4) place the ward 'in another planned permanent living arrangement.' ORS 419B.476(5)(b)."

*Id.* To change a child's plan from reunification with a parent, the juvenile court is required to "determine whether the Department of Human Services has made reasonable efforts *** and whether the parent has made sufficient progress to make it possible for the ward to safely return home." ORS 419B.476(2)(a).

If the juvenile court decides to change the child's permanency plan away from reunification, it must decide which of up to four potential plans to establish: adoption, guardianship, placement with a fit and willing relative, or another planned permanent living arrangement. ORS 419B.476(5)(b). If the court chooses to change the plan to adoption, it must consider whether a circumstance exists that would support forgoing or delaying filing a petition to terminate parental rights. ORS 419B.476(5)(d); ORS 419B.498(1)-(2). The burden of proving the existence of such a circumstance is on the party opposing the change of plan. *Dept. of Human Services v. S. J. M.*, 364 Or 37, 55, 430 P3d 1021 (2018).

Mother's first argument is that the trial court erred in finding that she was not successfully making progress in services that would allow the children to be returned within a reasonable time. We disagree. Under our standard of review, we view the evidence "in the light most favorable

to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). Here, sufficient evidence supports the trial court's conclusions.

Evidence in the record supports the trial court's findings that mother had missed multiple UAs, which supports the trial court's finding that there was "not enough information in the record to determine if she is maintaining sobriety." In addition, evidence supports the trial court's findings that mother had missed "three of eight individual sessions and six group sessions between November and January," "never engaged with a mentor," and observed visits with the children revealed that mother had not made progress in her parenting skills.

As to her second argument, mother argues that "durable" guardianship would better suit the children's needs than adoption. At the outset, we note that what mother and the trial court's judgment called "durable" guardianship is the type of guardianship set forth in ORS 419B.366. The term "durable" does not appear in the statute. However, the term has colloquially been used by practitioners, and in response, has appeared in trial court judgments and appellate decisions.[2] However, an ORS 419B.366 guardianship has also been referred to as a "general" guardianship. *See, e.g.*, *J. C.*, 365 Or at 226 (citing ORS 419B.366(2) and discussing the procedures "to establish a *general guardianship*" (emphasis added)). Whatever the colloquial nomenclature used, a

---

[2] The Supreme Court has used the term "durable" as recently as 2014:

"ORS chapter 419B identifies at least two long-term legal guardianships that may be appropriate in lieu of terminating parental rights. First, the juvenile court may establish a permanent guardianship if it finds by clear and convincing evidence that a ground for terminating parental rights exists, that it is in the ward's best interest that the ward's parents should never have physical custody of the ward, but that other parental rights and duties should not be terminated. ORS 419B.365. Second, the court may establish what is sometimes referred to as a 'durable' guardianship if the court finds by a preponderance of the evidence that the ward cannot safely be returned home within a reasonable time, that adoption is not an appropriate plan for the ward, that the proposed guardian is suitable, and that a durable guardianship is in the ward's best interests. ORS 419B.366(2), (5)."

*S. M.*, 355 Or at 247-48 (footnote omitted).

general guardianship under ORS 419B.366 differs from a permanent guardianship as set forth in ORS 419B.365 in that, a parent may move to vacate a general guardianship under ORS 419B.368(1). A permanent guardianship, on the other hand, deprives the parent of the ability to move to terminate it. ORS 419B.368(7) ("Notwithstanding subsection (1) of this section, a parent may not move the court to vacate a guardianship once a guardianship is granted under ORS 419B.365.").

In this case, mother did not advocate for a permanent guardianship under ORS 419B.365. Accordingly, the general guardianship mother advocated for, under ORS 419B.366, would allow mother the ability to move to terminate the guardianship at a future date. It was, axiomatically, less *permanent* than a "permanent" guardianship. Against that backdrop, the trial court considered evidence that one child had been diagnosed with an "unspecified adjustment disorder" and that an expert testified that a continued delay of permanency "may cause her undue stress and disrupt social-emotional and behavioral development. It would, therefore, be in [the child's] best interest to continue to progress toward a permanent plan sooner rather than later."

Mother's younger child has special needs and requires specialized care. Expert testimony in the record indicated the child needed "consistency, routine and stability" in light of his autism diagnosis and associated cognitive and communication delays. That testimony further recommended that the child needed "permanency as soon as possible."

The juvenile court's determinative assessment is what is in the best interest of the ward. The Oregon Supreme Court recently explained:

"An assessment of a child's best interest must be child-centered. If a decision that serves a child's best interest also happens to serve a parent's interests, then so be it. But termination may be appropriate even if a parent has a good chance of eventually succeeding in treatment and even if termination would dash a parent's hopes."

*Dept. of Human Services v. T. M. D.*, 365 Or 143, 166, 442 P3d 1100 (2019). Here, the trial court's determination that the general guardianship proposed by mother did not best serve the interests of both children was permissible given evidence in the record.

Affirmed.