124 October 8, 2025 No. 878

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of L. D. B.-N.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. B.,
*Appellant.*

Multnomah County Circuit Court
20JU02872;
Petition Number
114046;
A187178

Matthew J. Leady, Judge pro tempore.

Submitted August 28, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, Jacquot, Judge, and O'Connor, Judge.

O'CONNOR, J.

Affirmed.

**O'CONNOR, J.**

Mother appeals from a juvenile court's judgment establishing a general guardianship under ORS 419B.366.[1] In a single assignment of error, mother contends that the juvenile court erred when it determined that the Oregon Department of Human Services (ODHS) had met its burden to prove that the child, L, would not be able to return to mother's care within a reasonable time, and also when the court concluded that ODHS had met its burden to show that a general guardianship was in L's best interest. "[W]e review the juvenile court's legal conclusions for errors of law but are bound by its findings of historical fact if there is any evidence in the record to support them." *Dept. of Human Services v. A. D. J.*, 300 Or App 427, 429, 453 P3d 619 (2019) (internal quotation marks omitted). We describe, consistent with that standard of review, only the facts necessary to understand our resolution.

Mother gave birth to L in 2017, and ODHS removed L from mother in 2020. In January 2021, the juvenile court asserted jurisdiction over L based on mother's "chronic mental health problems." Mother has been diagnosed with bipolar disorder, a seizure disorder, and post-traumatic stress disorder, and mother has experienced psychiatric hospitalizations throughout her life. The juvenile court changed L's permanency plan from reunification to guardianship in 2023. Because mother regularly visited with L at the ODHS office, ODHS had already determined that adoption was not the appropriate permanency plan. In December 2024, ODHS filed a motion under ORS 419B.366 to establish a general guardianship for L, and a guardianship hearing occurred in February 2025. At the time of the hearing, L

---

[1] ORS 419B.366(6) provides:

"If the court has approved a plan of guardianship under ORS 419B.476, the court may grant the motion for guardianship if the court determines, after a hearing, that:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d) Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interest, the court shall consider the ward's wishes."

was in the care of her maternal grandmother, and ODHS proposed her maternal grandmother as L's legal guardian when it moved for a general guardianship.

Mother had undergone two prior psychological evaluations: one in 2012 and one in 2020. Among other things, both evaluations indicated that mother struggled to acknowledge her diagnosis of bipolar disorder and, when she did acknowledge it, she struggled to manage the symptoms. At the hearing, mother argued that because the evaluations were not current, they failed to provide current information about her mental health. The juvenile court did not expressly address that argument. It relied on testimony that mother was currently struggling to manage her mental health.

The juvenile court granted a general guardianship over L. It acknowledged that L's psychological evaluation was a few years old. Nonetheless, the court explained, the recommendation contained in L's evaluation was that L needed to have permanency as soon as possible and "this is as soon as possible." The court explained to mother at the hearing that

> "when you are stable and healthy, you are a remarkable person. It's just that, it ebbs and flows very consistently. And as recently as just a month or two ago, you were not at your best. You would have risked [L] being exposed to violence or neglect, at least inconsistent caregiving. And [L] can't have that."

The juvenile court made written findings that included:

> "Despite [mother's] beliefs about her mental health, her mental health issues, which have presented a current, non-speculative immediate risk of physical and emotional harm to [L] throughout the life of this case, continue to impair her ability to safely parent.
>
> "* * * * *
>
> "[L] cannot return home safely to either parent's care today, or within a reasonable period of time due to the conditions and circumstances of both parents. Of note, [mother] has a pattern and history of residential instability and mental health decompensation, both of which are identifiable today."

The juvenile court also found that L wanted a relationship with her mother, but L wanted her maternal grandmother to be her guardian.

In this appeal, mother challenges only the juvenile court's determinations that ORS 419B.366(6)(a) and (d) were satisfied. ODHS must prove the elements of ORS 419B.366(6) by a preponderance of the evidence. ORS 419B.366(2). Paragraph (6)(a) requires ODHS to prove that "[t]he ward cannot safely return to a parent within a reasonable time." ORS 419B.366(6)(a). "Reasonable time" is "a period of time that is reasonable given a child or ward's emotional and developmental needs and ability to form and maintain lasting attachments." ORS 419A.004(26). Paragraph (6)(d) requires ODHS to prove that "[g]uardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interest, the court shall consider the ward's wishes." ORS 419B.366(6)(d).

Mother argues that the juvenile court improperly relied on historical evidence to conclude that ODHS met its burden, instead of evaluating her current circumstances. Mother specifically challenges the juvenile court's reliance on evidence from the permanency judgment and mother and L's years-old psychological evaluations. We have reviewed the record, and we conclude that ODHS presented sufficient and contemporary evidence at the general guardianship hearing to support the juvenile court's determination that L could not be returned to mother in a reasonable time and that guardianship is in L's best interest.

The juvenile court found the ODHS caseworker who worked with L and mother to be credible. The caseworker testified that she believed that mother's current circumstances had not changed or sufficiently improved enough to ameliorate the concerns for placing L in mother's care since the permanency judgment that was entered two years prior. The caseworker also testified that "based on [mother's] reports" to her, mother was not engaging in "medication management." Additionally, mother was living in Washington with her younger child, N, at the time of the hearing, and the Washington state child welfare agency had taken N into protective custody five times in five different cities during

2024 due to concerns about mother's mental health. The ODHS caseworker confirmed that at a January 2024 visit with N in Washington—a month prior to the guardianship hearing—"security had to come and get [mother] and [N] out of the bathroom that [mother] had locked themselves into," and that both of them were "screaming" during that incident. Moreover, during mother's own testimony at the hearing, she refused to acknowledge her bipolar disorder diagnosis and the fact that her mental health symptoms were the reason that L was not in her care. That evidence permitted the juvenile court to conclude that ODHS met its burden under ORS 419B.366(a) and (d). The juvenile court did not err when it granted ODHS's motion for guardianship.

Affirmed.