Argued and submitted December 18, 2012, affirmed April 3, petitions for review allowed July 18, 2013 (353 Or 867)

In the Matter of M. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110590;
Petition Number 100311MCG1;
A151376 (Control)

In the Matter of L. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110591;
Petition Number 100311MCG2;
A151377

In the Matter of O. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110592;
Petition Number 100311MCG3;
A151378

In the Matter of L. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110593;
Petition Number 100311MCG4;
A151379

In the Matter of J. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110594;
Petition Number 100311MCG5;
A151380

In the Matter of P. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110595;
Petition Number 100311MCG6;
A151381

In the Matter of N. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110596;
Petition Number 100311MCG7;
A151386

In the Matter of J. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent*,

*v.*

S. M.
and R. M.,
*Appellants*.

Marion County Circuit Court
J110597;
Petition Number 100311MCG8;
A151388

300 P3d 1254

Kimberlee Petrie Volm, Deputy Public Defender, argued the cause for appellant R. M. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Sarah Peterson and Metcalfe & Peterson LLC filed the brief for appellant S. M.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

In this dependency case, the juvenile court asserted jurisdiction over parents' eight children based on the court's determination that the children's conditions and circumstances endangered their welfare. ORS 419B.100(1)(c). At a subsequent review hearing, the Department of Human Services (DHS) asked the juvenile court to order the immunization of the children over mother's and father's religious objections to the children's immunization. The court granted DHS's request and issued a review judgment for each child that provided that the children "may be immunized over the parents' objection based on medical advice." Mother and father appeal those judgments. We affirm.

In late January 2012, in response to a petition filed by DHS, mother and father admitted various allegations regarding the conditions and circumstances of their children, who were between one and eight years of age. The juvenile court entered a jurisdictional and dispositional judgment under ORS 419B.100(1)(c) for each child, finding that the conditions and circumstances of the children endangered their welfare.[1] With those judgments, the juvenile court declared the children wards of the court, ORS 419B.328; placed the children in the legal custody of DHS, ORS 419B.337; and named DHS the children's guardian, ORS 419B.370(1). DHS eventually placed the children in the physical custody of relatives of the children.

At a review hearing in early April 2012, DHS, with the support of an attorney for the children, asked the court to order the children to be immunized. Through counsel, both mother and father raised religious objections to the proposed immunizations. Nevertheless, the court granted DHS's request, acknowledging the parents' objections but

---

[1] ORS 419B.100 provides, as relevant:

"(1) *** [T]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(c) Whose condition or circumstances are such as to endanger the welfare of the person or of others[.]"

concluding that, because parents no longer had custody of the children, the decision ultimately rested with the state:

> "I am going to order immunizations for the children. I understand that this is not something the parents want[] and that the parents have made this choice for their children in the past, *but the children are in the care and custody of the [s]tate at this point,* and so I'm making the decision on behalf of the children."

(Emphasis added.) Then, following mother's more detailed explanation of her objection, the court reaffirmed its conclusion:

> "[T]he difficulty the Court has is that you've exercised th[e] discretion [to withhold immunizations] in the past appropriately as a parent. You've made those decisions and you've made them knowingly. You've done your research and I appreciate that, *but I also know that now the children are in the custody of the [s]tate * * *.*
>
> "* * * * *
>
> "I know that you're not in favor of this, but I am going to go ahead and order that all the children be immunized as per the decision of the medical provider when the foster parents take them in for evaluation and immunization [and] that they be allowed to immunize the little children as well."

(Emphasis added.)

Following the review hearing, the juvenile court entered a review judgment for each child, providing that "[t]he child may be immunized over the parents' objection based on medical advice." Mother filed a motion to stay the immunization provision of the judgments pending appeal, which father joined. In early May 2012, the juvenile court granted a stay, and mother and father each timely appealed the court's review judgments, assigning error solely to the court's immunization order.[2]

---

[2] The juvenile court held a subsequent review hearing in July 2012 and entered an additional review judgment for each child. Mother and father each timely filed amended notices of appeal, purporting to appeal those judgments as well. However, those judgments are silent on the issue of immunization, and neither mother nor father has otherwise assigned error to them. Accordingly, we affirm those judgments without further discussion.

Parents make two arguments on appeal.[3] First, they challenge DHS's and the court's statutory authority to order immunization of their children, arguing that, notwithstanding DHS's custody and guardianship, they retain the right under Oregon statutes to decide whether to immunize their children.[4] Second, relying on our decision in *State ex rel Juv. Dept. v. Smith*, 205 Or App 152, 133 P3d 924 (2006), they assert that, before DHS may immunize a child over a parent's objection, it must show that the parent is unfit to make immunization decisions on behalf of the child and that immunization is necessary for the child's short-term health and safety; parents contend that DHS made neither showing. We reject both of parents' arguments and affirm.

We begin with parents' statutory argument, which is best addressed by reviewing the provisions of the juvenile code that relate to the juvenile court's authority to direct the medical treatment of children over whom it has jurisdiction in a dependency proceeding—that is, the court's wards. ORS 419B.328(1). ORS chapter 419B provides for three roles in which nonparents make health-care decisions for a ward during a dependency proceeding: that of the ward's legal custodian, ORS 419B.373; that of the ward's guardian, ORS 419B.376; and that of the juvenile court, ORS 419B.352. We address those roles in turn.

First, once it has asserted jurisdiction, the juvenile court may determine the appropriate legal custodian of a ward. ORS 419B.331; ORS 419B.337. In doing so, the court may determine that the ward remain in the custody of the ward's parents, subject to protective supervision, ORS 419B.331; that the ward be placed in the custody of another individual or institution, *id.*; or that the ward be placed in the custody of DHS, ORS 419B.337. The legal custodian of a ward, in turn, is responsible for the physical custody of the ward and must provide the ward with necessaries,

---

[3] Although mother and father filed separate briefs, mother incorporated father's arguments in their entirety. Accordingly, we address their arguments together.

[4] Although parents assert that their right to exempt their children from immunization for religious reasons is well established in the applicable Oregon statutes, they do not advance any independent argument that the immunization order was a direct violation of their state or federal constitutional rights to free expression or religious liberty.

care, education, and discipline. ORS 419B.373(1) - (3). At the same time, the legal custodian has the authority to approve "ordinary medical, dental, psychiatric, psychological, hygienic or other remedial care and treatment for the ward, and, in an emergency where the ward's safety appears urgently to require it, to authorize surgery or other extraordinary care." ORS 419B.373(4).

Second, the court may grant legal guardianship of a ward to the ward's legal custodian—whether that custodian is an individual or an institution, ORS 419B.370(2), or DHS, ORS 419B.370(1). If the court declines to appoint a guardian, it retains the duties and authority of a guardian as an incident of its wardship. ORS 419B.370(3). Among many other things, a ward's guardian may "authorize surgery for the ward"[5] and "make other decisions concerning the ward of substantial legal significance." ORS 419B.376(1), (5).

Third, the court itself may direct that the ward "be examined or treated by a physician, psychiatrist or psychologist, or receive other special care or treatment in a hospital or other suitable facility." ORS 419B.352.[6] That authority rests with the court without regard to the identity of the legal custodian, the legal guardian, or the juvenile court's retention of the powers of guardianship over a ward. However, the authority is subject to the general limitations of ORS 419B.090(4), which provides, as relevant:

"The provisions of [ORS chapter 419B] shall be construed and applied in compliance with federal constitutional limitations on state action established by the United States Supreme Court with respect to interference with the rights of parents to direct the upbringing of their children, including, but not limited to, the right to:

"(a) Guide the secular and religious education of their children;

---

[5] In the event that the legal custodian and the guardian are different entities, or if the court retains the powers of guardianship, that authority coexists with that of the legal custodian under ORS 419B.373(4) to authorize emergency surgery.

[6] The court may also authorize emergency medical care of a child at any time, including before the filing of a dependency petition. ORS 419B.110. The court's authority in that instance extends to extraordinary medical care, such as surgery, and may be exercised when "no parent is available or willing to consent to the care." *Id.*

"(b) *Make health care decisions for their children*; and

"(c) Discipline their children."

(Emphasis added.)

As noted, after the juvenile court entered the jurisdictional judgments in this case, DHS became the legal custodian and guardian of parents' children. As the legal custodian, DHS has authority to approve "ordinary medical, dental, psychiatric, psychological, hygienic or other remedial care and treatment for the ward, and, in an emergency where the [children's] safety appears urgently to require it, to authorize surgery or other extraordinary care." ORS 419B.373(4). As the guardian, DHS may also "authorize surgery for" the children and "make other decisions concerning the [children] of substantial legal significance." ORS 419B.376(1), (5). Furthermore, the court itself may direct that the children "be examined or treated by a physician, psychiatrist or psychologist, or receive other special care or treatment in a hospital or other suitable facility." ORS 419B.352.

Parents argue, however, that the power of DHS and the court to make health-care decisions for the children must give way to parents' statutory right to exempt their children from immunization. That right, they argue, is embodied in ORS 433.267, which allows parents who have a religious objection to immunization to exempt their children from immunization as a condition of school attendance; ORS 433.284, which requires private schools to include an exemption to their immunization requirements for parents who have a religious objection to immunization; and ORS 431.264, which allows a person to exempt himself or herself from an order of the public health director, otherwise requiring the person to be immunized.

There are two problems with parents' argument: First, the statutes on which they rely do not create a stand-alone statutory right of parents to exempt their children from immunization. Instead, they allow parents to exempt their children from immunization in certain contexts—namely, in the context of mandatory school immunization and in response to an order of the public health director.

Thus, by their terms, the statutes on which parents rely do not apply to the situation at issue here—that is, where DHS seeks to immunize children for whom it has custody and guardianship—and, for that reason, they do not assist parents.

Second, nothing in the juvenile code provisions that authorize the juvenile court or a child's legal custodian or guardian to make health-care decisions for a child limits that authority by providing or recognizing a right of parents to exempt their children from immunization. The statutes provide the juvenile court and a child's custodian or guardian with broad authority; they do not—in their text, context, or apparent purpose—contain an exception to that authority with respect to immunizations, nor do they condition exercise of that authority on parental consent to immunizations or other health-care decisions. Thus, the Oregon statutes on which parents rely do not grant them any right to exempt their children from immunizations under the circumstances of this case.

We turn to parents' second argument, which is that they retain their right to make decisions regarding the upbringing of their children notwithstanding that the juvenile court has properly asserted dependency jurisdiction over the children and has taken custody of the children from them. Among those decisions, parents argue, is whether to immunize their children. Relying on *State ex rel Juv. Dept. v. Smith*, 205 Or App 152, parents contend that they retain the right to make those decisions unless and until the state demonstrates that, first, they are unfit to make the particular decision at issue and, second, that the proposed action is necessary for the child's short-term health and safety. The state argues, in turn, that the parental right to direct a child's upbringing attaches only to a fit parent and that, in light of the juvenile court's jurisdictional and dispositional judgments, parents were "unfit" parents at the time that the juvenile court ordered their children to be immunized.[7]

_____

[7] "Fitness," as used by the state here, does not refer to the statutory showing that the state must make ORS 419B.502 as a basis to terminate a parental relationship. Instead, it refers to the term as used by the United States Supreme Court

Though parents rely primarily on *Smith*, their argument is grounded in the plurality opinion of the United States Supreme Court in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 49 (2000), and the Oregon Supreme Court's application of *Troxel* in *O'Donnell-Lamont and Lamont*, 337 Or 86, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005). We begin with that foundational background before addressing parents' reliance on *Smith*.

In *Troxel*, a dispute over visitation arose between the paternal grandparents and the mother of several children. The grandparents petitioned for visitation rights under a Washington statute that allowed a court to award visitation to any person at any time if the court determined that visitation was in the best interest of the child, and a Washington Superior Court granted visitation to the grandparents under that statute. In invalidating the statute, a plurality of the United States Supreme Court began with the well-established principle that the Due Process Clause of the Fourteenth Amendment "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." 530 US at 66. Significantly, the Court then noted that the mother had not been found to be, nor was she alleged to be, an unfit parent. "That aspect of the case [was] important," the Court continued, "for there is a presumption that fit parents act in the best interests of their children." *Id.* at 68. In light of that presumption, the Court observed that

> "*so long as a parent adequately cares for his or her children (i.e., is fit)*, there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."

*Id.* at 68-69 (emphasis added).

Turning to the facts of the case, the Court concluded, "The problem here is not that the Washington Superior Court intervened, *but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests.*" *Id.* at 69 (emphasis added).

---

in *Troxel v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 49 (2000). *See Smith*, 205 Or App at 166 n 8 (noting use of that term in *Troxel*).

Because the Washington Superior Court "contravened the traditional presumption that a fit parent will act in the best interest of his or her child[,]" it "failed to provide any protection for [the mother's] fundamental constitutional right to make decisions concerning the rearing of her own daughters." *Id.* at 69-70.

The Oregon Supreme Court addressed *Troxel* for the first time in *O'Donnell-Lamont*, a case in which the father of two children appealed an award of custody to the children's maternal grandparents. As with the mother in *Troxel*, the father in *O'Donnell-Lamont* was neither alleged nor found to be "unfit" as a parent. *O'Donnell-Lamont*, 337 Or at 93, 97. Nevertheless, the trial court granted custody of the father's two children to their maternal grandparents under ORS 109.119.

On review, the Oregon Supreme Court noted that *Troxel* did not delineate the precise scope of a parent's right to make decisions regarding the upbringing of the parent's children, but it emphasized that "a parent's right to make decisions related to a child is not absolute, but rather provides the basis for a 'presumption that fit parents act in the best interests of their children.'" *O'Donnell-Lamont*, 337 Or at 98 (quoting *Troxel*, 530 US at 68). According to the Oregon Supreme Court, the *Troxel* plurality had specified that, when a decision made by a *fit parent* is subject to judicial scrutiny, due process requires that the court "'accord at least some weight to the parent's own determination.'" *Id.* at 99 (quoting *Troxel*, 530 US at 70).

The father in *O'Donnell-Lamont* did not argue that ORS 109.119—which had been amended in the wake of *Troxel* to permit a court to award custody of a child to a nonparent when the court finds that *Troxel's* fit-parent presumption has been rebutted by a preponderance of the evidence—was facially unconstitutional. 337 Or at 104. Nevertheless, the father argued that, under *Troxel*, ORS 109.119 was unconstitutional in application *unless* the state demonstrates that the legal parent is unable to care adequately for the child and that custodial placement with the legal parent will harm the child. *Id.* at 119. The court rejected father's argument, reiterating that "*Troxel* goes no

further" than requiring a "court [to] presume that a fit parent's decision is in the best interest of the child, [which means that] the court may reach a decision contrary to the wishes of the parent only if there is evidence sufficient to overcome that presumption." *Id.* at 120. On *de novo* review, the Supreme Court concluded that the award of custody to the children's maternal grandparents was appropriate under ORS 109.119. *Id.* at 118.

It was within that analytical framework that, in *Smith*, we applied *Troxel*'s standard to a case in which a mother appealed a juvenile court's order appointing a health-care guardian under ORS 125.305 for a "conscious but neurologically and orthopedically devastated" child. *Smith*, 205 Or App at 155. Factually, *Smith* differed from both *Troxel* and *O'Donnell-Lamont*—and resembled this case—in a significant way: At the time that the court appointed the health-care guardian, the mother had lost guardianship and legal custody of her child in a juvenile dependency proceeding. Nevertheless, the mother objected to the appointment of the health-care guardian, who would have the authority to issue a "do not resuscitate" order, on the basis of her religious belief in miracles. *Id.* Reviewing the pertinent statutory framework, we concluded, on *de novo* review, that the juvenile court's order appointing the health-care guardian was lawful under the applicable statutes. *Id.* at 165.

We then addressed whether the order nevertheless violated the mother's fundamental right to exercise control over her child, as articulated in *Troxel*. *Id.* After reviewing the Court's analysis in *Troxel*, and the Oregon Supreme Court's analysis in *O'Donnell-Lamont*, we concluded that "the facts of [*Smith*] significantly distinguish it from *Troxel* itself and from the kind of cases that, under *Troxel*, raise questions implicating the right of fit parents to make unfettered decisions about the care, custody, and control of their children." *Id.* at 169. In reaching that conclusion, we noted several distinguishing factors, among them that the state had "established that mother was unfit—*not generally, but with respect to making the decision to withhold or withdraw life-sustaining procedures*"—before it appointed the health-care guardian. *Id.* at 168 (emphasis added).

In a lengthy block quotation, parents reproduce that part of our decision in *Smith* and, relying on the emphasized language set out above, argue that *Smith* required the juvenile court in this case to make both a particularized finding of unfitness regarding the decision to immunize the children and a finding that immunization was medically necessary. Contrary to parent's argument, we conclude that *Smith* established no such rule.

*Smith* held only that, on its facts, it was distinguishable from *Troxel* and did not implicate the right of fit parents to make decisions regarding the care, custody, and control of their children. *Id.* at 169. Indeed, both elements of the rule parents attribute to *Smith* would conflict with the holding of *Troxel*, as articulated in *O'Donnell-Lamont*. Regarding the first element—that the court must make an individualized finding of unfitness—both *Troxel* and *O'Donnell-Lamont* involved state interference with the rights of a parent who was neither alleged nor found to be unfit. In *Troxel*, the Court concluded that the absence of such a finding, while significant to its analysis, did not, on its own, render the state's interference unlawful. *See Troxel*, 530 US at 69 ("The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to [the mother's] determination of her daughters' best interests."). *O'Donnell-Lamont* goes further; there, the Oregon Supreme Court held that the state's interference with the parent's rights, in the absence of any allegation or finding of unfitness, did not run afoul of the parent's due process rights. *See O'Donnell-Lamont*, 337 Or at 97, 118-21.

Regarding the second element—that a finding of medical necessity was required before the court could order immunization—parents' argument is, in essence, the argument that the Oregon Supreme Court rejected in *O'Donnell-Lamont*. There, as noted above, the father had argued that *Troxel* required a particularized finding that his children would be harmed by awarding custody of them to him. *Id.* at 119. The court disagreed and held:

"As our earlier discussion of *Troxel* demonstrates, that case does not sweep as broadly as father asserts. *Troxel* specifically declined to address the so-called 'harm'

standard, and it also failed to articulate an 'inadequate care' requirement. Rather, the due process right that the Supreme Court affirmed in *Troxel* is important, but limited: a court may not override a parent's decision about the care or custody of a child simply because the court determines that the decision is not in the child's best interest, as the trial court did in *Troxel* regarding a grandparent's interest in visitation. Instead, the court must presume that a fit parent's decision is in the best interest of the child, and the court may reach a decision contrary to the wishes of the parent only if there is evidence sufficient to overcome that presumption. *Troxel* goes no further."

*Id.* at 119-20. We see no significant distinction between the finding parents seek here—*viz.*, that immunizations are medically necessary—and the risk-of-harm finding that the father sought, and the Supreme Court rejected, in *O'Donnell-Lamont*. Hence, we reject parents' contention that the court's immunization order violated their right as parents to direct the upbringing of their children.[8]

Two other jurisdictions, faced with similar disputes over the immunization of children who were in state custody, have reached the same conclusion, although under their own statutory dependency framework. In *In re Stratton*, 153 NC App 428, 571 SE2d 234, *rev den*, 356 NC 436, 573 SE2d 512 (2002), the parents of several children appealed an order that their children, who had been adjudicated to be dependent, be immunized over the parents' religious objections. The parents argued that, because North Carolina provides for a statutory exemption to its immunization requirement for school attendance, they retained the right to object to their children's immunization. The court rejected that argument:

"[I]t is clear that [the parents] no longer have authority to object to the immunization of the children. Here, the children have been adjudicated dependent and neglected by their parents, * * * and their legal custody now resides with [the Department of Social Services (DSS)]. The children have been removed from their home and placed in foster care

---

[8] We acknowledge the possibility that, in rare circumstances, a state decision on the care of a child might run afoul of a parent's or a child's state or federal constitutional rights notwithstanding that the state has properly assumed wardship and custody of a child. However, we need not decide in this case the basis or nature of a challenge to such a decision.

because their parents failed to provide adequate shelter, clothing, food, medical care and formal education. By their failure to provide basic necessities for their children, [the parents] have acted in a manner inconsistent with their constitutionally protected parental relationship. * * * The placement of the children in the temporary custody of DSS upon the adjudication of neglect was in the best interest of the children, and foreclosed [the parents'] ability to assert the rights under [the North Carolina statute allowing for parents to exempt their children from school immunization requirements]. Because [the parents] have surrendered the companionship, custody, care and control of their children by neglecting their welfare, DSS is now the only party that may legitimately make health decisions for the [parents'] children."

*Id.* at 434-35, 571 SE2d at 238.

A Georgia court reached the same result in *In re C. R.*, 257 Ga App 159, 570 SE2d 609 (2002). There, relying on the Georgia counterpart to ORS 419B.337, which sets out the rights and duties of a ward's legal custodian, the court affirmed a juvenile court's order allowing immunization of a child over the mother's religious objection:

"The mother forfeited her right to control her child's medical care when she lost custody of him, even though the loss may be temporary.

"Because the mother did not appeal the juvenile court's order finding [her child] to be a deprived child, she is bound by that determination."

*Id.* at 160-61, 570 SE2d at 610.

In the one case that we have found that held that a parent retained the authority to object to immunization, *Diana H. v. Rubin*, 217 Ariz 131, 171 P3d 200 (2007), the Arizona Court of Appeals concluded, over a dissent, that the legal custodian of a dependent child lacked the authority to immunize a child over the mother's religious objection under an Arizona statute defining the rights and responsibilities of "custody" to include "*'[t]he responsibility to provide the child with * * * medical care * * * subject to the residual parental rights and responsibilities* if they have not been terminated by judicial decree.'" *Id.* at 134, 171 P3d at 203 (quoting Ariz Rev Stat § 8-531(5)) (emphasis in *Diana H.*). The court

concluded that the residual rights of parents included the right to object to immunization and "that a dependency determination does not extinguish a parent's right to control the religious upbringing of his or her child because, *by the terms of the statute* defining 'legal custody,' the right never passes to the state." *Id.* at 135, 171 P3d at 204 (emphasis added). Whatever the merits of the court's decision under Arizona law, the decision does not affect our holding under Oregon law.

In summary, we conclude that the juvenile court's order directing that parents' children may be immunized pursuant to medical advice was a lawful exercise of that court's authority under ORS 419B.352. Further, the order did not unlawfully infringe on parents' constitutional rights to direct the upbringing of their children.

Affirmed.