Argued and submitted May 24; judgment changing permanency plan to adoption reversed and remanded, otherwise affirmed July 7, 2022

In the Matter of S. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

S. H.,
*Child-Respondent,*

*v.*

J. H.,
aka J. W. H., aka J. W. H.
and S. B., aka S. L. B., aka S. L. N. B.,
*Appellants.*

Columbia County Circuit Court
19JU06106;
A177394 (Control), A177980

514 P3d 143

In this consolidated dependency case, parents challenge a judgment of the juvenile court changing the permanency plan for their four-year-old daughter from reunification to adoption. They contend that the trial court erred in denying their motion to dismiss dependency jurisdiction or, in the alternative, in rejecting their contention that exceptions exist to prevent a change in the plan to adoption. *Held*: The Court of Appeals declined to address parents' contention that the trial court erred in denying their motion to dismiss, because parents did not move to dismiss jurisdiction and therefore did not preserve their contention. The court agreed with parents, however, that an exception to termination of parental rights and adoption exists, because child is "being cared for by a relative and that placement is intended to be permanent[.]" ORS 419B.498(2)(a). The court therefore reversed the judgment changing the permanency plan to adoption and remanded.

Judgment changing permanency plan to adoption reversed and remanded; otherwise affirmed.

Ted E. Grove, Judge.

Joel C. Duran, Deputy Public Defender, argued the cause for appellant J. H. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Kristen G. Williams argued the cause and filed the briefs for appellant S. B.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Christa Obold Eshleman argued the cause and filed the brief for respondent S. H.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

TOOKEY, P. J.

Judgment changing permanency plan to adoption reversed and remanded; otherwise affirmed.

**TOOKEY, P. J.**

In this consolidated dependency case, parents challenge a judgment of the juvenile court changing the permanency plan for their four-year-old daughter from reunification to adoption.

In their first assignments of error, parents contend that the juvenile court erred in denying their motion to dismiss dependency jurisdiction. As the state correctly argues, neither party filed a written motion to dismiss. And, although parents contend that mother orally moved to dismiss jurisdiction during her opening statement and closing argument, mother's opening statement and closing argument cannot be construed as having moved to dismiss jurisdiction. Therefore, because parents' arguments are not preserved, we decline to address the issue. Accordingly, we reject parents' first assignments of error without further discussion.

In their remaining assignments of error, parents challenge the juvenile court's rejection of their contention that exceptions exist to prevent a change in the plan to adoption. In reviewing the judgment changing the permanency plan, we view the juvenile court's findings in the light most favorable to the court's disposition to determine whether they are supported by legally sufficient evidence and for whether the findings support the court's legal conclusions. We review the juvenile court's legal conclusions for errors of law. *Dept. of Human Services v. S. J. M.*, 364 Or 37, 40, 56-57, 430 P3d 1021 (2018).

Both parents have a history of methamphetamine addiction and criminal activity. They are currently incarcerated, mother until January 2023 and father until October 2023. Child, who is appearing on appeal through counsel, was four years old at the time of the permanency hearing. She is well adjusted and has strong bonds with her maternal grandmother and great-grandmother, whom she loves and with whom she has lived for the greater part of her life. She also has strong bonds with her parents, whom she loves and enjoys visiting, and with her friends and teachers in the community. The grandmothers initiated the dependency proceeding, seeking the court's assistance with parents'

behaviors. As to father, the bases for dependency jurisdiction were father's admissions that his substance abuse and residential instability, financial instability, and chaotic lifestyle interfered with his ability to safely parent child, and that he was subjected to domestic violence by the mother and unable to protect child from exposure to mother's violence. As to mother, the alleged bases for dependency jurisdiction were mother's admissions that her substance abuse interferes with her ability to safely parent child, and that she was subjected to domestic violence by father and unable to protect child from exposure to father's violence.

In the life of this case, DHS has returned child to mother's care several times without success, and then returned child back to the great-grandmother's care each time. Child has been a ward of the court for more than 15 of the last 22 months. DHS therefore filed a petition to change the permanency plan from reunification to adoption. ORS 419B.498(1)(a).[1]

Before a court may change a child's permanency plan away from reunification, ORS 419B.476(2)(a) requires that the proponent of the change "must prove by a preponderance of the evidence both that (1) DHS made reasonable efforts to make it possible for the child to be reunified with his or her parent, and (2) despite those efforts, the parent's progress was insufficient to make reunification possible" at the time of the hearing. *Dept. of Human Services v. S. J. M.*, 364 Or 37, 40, 56-57, 430 P3d 1021 (2018); *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 374, 473 P3d 131 (2020). In father's second assignment and mother's second and third assignments, parents challenge the trial court's determination that DHS made reasonable efforts toward reunification and that parents' progress was insufficient. Based on our review of the record, we conclude that the trial court's findings are supported by legally sufficient evidence. Thus, we conclude that the trial court did not err in changing the plan from reunification.

---

[1]  We note that, although ORS 419B.498(1) requires that, after the designated period of time, DHS "shall *simultaneously* file a petition to terminate the parental rights of a child or ward's parents and identify, recruit, process and approve a qualified family for adoption" (emphasis added), this case involves a permanency determination only, and has not proceeded to termination.

The great-grandmother, who is child's primary parent figure, testified that she is in good health would like to continue to care for child. Based on the great-grandmother's reference, DHS identified family members in Utah as a potential adoptive placement. The family's DHS caseworker said that the Utah family would maintain child's relationships with the parents and grandparents. The great-grandmother testified, however, that it would be financially impossible for her to bear the expense to visit child in Utah, and that moving child out of her care to Utah for adoption would be devasting to child. She stated that she would be an adoptive placement for child if required, and that the Utah family could be a resource for child if she became unable to care for child.

But the great-grandmother's preference would be to serve as child's permanent guardian. Although her hope is that child can one day return to mother's care, she recognizes that child needs the stability of permanent care now. Child's attorney also advocated for a permanent guardianship with the great-grandmother.

ORS 419B.498(1)(a) requires DHS to file a petition to terminate parental rights and to proceed with adoption when a "'child or ward has been in substitute care under the responsibility of the department for 15 months of the most recent 22 months,'" unless some exception applies. *S. J. M.*, 364 Or at 51 (quoting ORS 419B.498(1)(a)). It is the parents' burden to establish an exception to termination and adoption. *Id.* at 55. One such exception is that a child is "being cared for by a relative and that placement is intended to be permanent[.]" ORS 419B.498(2)(a).[2] The trial court found

---

[2] ORS 419B.498(2) provides:

"The department shall file a petition to terminate the parental rights of a parent in the circumstances described in subsection (1) of this section unless:

"(a) The child or ward is being cared for by a relative and that placement is intended to be permanent;

"(b) There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"(A) The parent is successfully participating in services that will make it possible for the child or ward to safely return home within a reasonable time as provided in ORS 419B.476(5)(c).

that child's placement with her great-grandmother was not intended to be permanent. Father challenges that finding in his third assignment, and mother challenges that finding in her fourth assignment.

We agree with parents that the trial court's finding is not supported by the evidence. It is undisputed that the great-grandmother and child have a relationship akin to that of a parent and child. Although the great-grandmother testified that she hoped that child could someday live with her mother, it is clear that she sees herself as a permanent placement. Her testimony is undisputed that her intention is to care for child permanently. Thus, we conclude that the record requires the finding that child is in a permanent placement with a relative, which constitutes an exception to a change to adoption under ORS 419B.498(2)(a).

Parents have advocated for a durable guardianship with the great-grandmother; child and the great-grandmother have advocated for a permanent guardianship.[3]

---

"(B) Another permanent plan is better suited to meet the health and safety needs of the child or ward, including the need to preserve the child's or ward's sibling attachments and relationships; or

"(C) The court or local citizen review board in a prior hearing or review determined that while the case plan was to reunify the family the department did not make reasonable efforts or, if the Indian Child Welfare Act applies, active efforts to make it possible for the child or ward to safely return home; or

"(c) The department has not provided to the family of the child or ward, consistent with the time period in the case plan, such services as the department deems necessary for the child or ward to safely return home, if reasonable efforts to make it possible for the child or ward to safely return home are required to be made with respect to the child or ward.

[3] In *Dept. of Human Services v. S. M.*, 355 Or 241, 248 n 3, 323 P3d 947 (2014), the court described the distinction between a durable guardianship and a permanent guardianship:

"A durable guardianship differs from a permanent guardianship in that the criteria for establishing a durable guardianship are less stringent than those for a permanent guardianship. *Compare* ORS 419B.366(5) (durable guardianship), with ORS 419B.365(2), (3) (permanent guardianship). Moreover, a parent may move to vacate a durable guardianship but not a permanent guardianship. *See* ORS 419B.368(1), (7)."

Under ORS 419B.366(5), the court may grant the petition for durable guardianship if it makes the following findings:

"(a) The ward cannot safely return to a parent within a reasonable time;

"(b) Adoption is not an appropriate plan for the ward;

On remand, the juvenile court will have an opportunity to address whether a durable or permanent guardianship or other permanency plan, ORS 419B.476(5)(b), is best suited to meet the child's health and safety needs.[4]

Having concluded that a change in permanency plan to adoption is subject to the exceptions stated in ORS 419B.498(2)(a), we need not address parents' challenge to the juvenile court's determination that it was in child's best interests to change the permanency plan to adoption.

Judgment changing permanency plan to adoption reversed and remanded; otherwise affirmed.

---

"(c) The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d) Guardianship is in the ward's best interests."

The court may grant a permanent guardianship under the circumstances described in ORS 419B.365:

"(2) The grounds for granting a permanent guardianship are the same as those for termination of parental rights.

"(3) Upon the filing of a motion to establish guardianship under this section, the court shall make a finding, subject to the procedures under section 15 (4), chapter 14, Oregon Laws 2020 (first special session), regarding whether there is reason to know that the child is an Indian child.

"(4) The court shall grant a permanent guardianship if it finds by clear and convincing evidence that:

"(a) The grounds cited in the petition are true; and

"(b) It is in the best interest of the ward that the parent never have physical custody of the ward but that other parental rights and duties should not be terminated."

[4] We note that, although the juvenile court determined that there was no compelling reason not to change the permanency plan to adoption, the court did not make any findings relating to an adoptive placement and, in fact, determined that it was premature to change the child's placement with the great-grandmother.